**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey R. GOBEY, Defendant–Appellant.**

**No. 93–1060.**

United States Court of Appeals,
Tenth Circuit.

Dec. 14, 1993.

---

Joseph Saint–Veltri, Denver, CO, for defendant-appellant.

John Milton Hutchins, Asst. U.S. Atty. (James R. Allison, Interim U.S. Atty.; David M. Gaouette, Asst. U.S. Atty., with him on the brief), Mountain States Drug Task Force, District of Colorado, Denver, CO, for plaintiff-appellee.

Before McKAY, Chief Judge, ENGEL * and BALDOCK, Circuit Judges.

McKAY, Chief Judge.

After the federal district court denied his pretrial motion to suppress a gun, currency, and drugs, Mr. Gobey pleaded guilty to possession of methamphetamine with intent to distribute, possession of a semiautomatic handgun in connection with a drug trafficking offense, illegal possession of a weapon by a convicted felon, and illegal possession of ammunition by a convicted felon. Mr. Gobey reserved his right to appeal the denial of his suppression motion pursuant to Federal Rule of Criminal Procedure 11(a)(2). In this appeal, he alleges that the warrant used to secure his arrest was invalid, that his consent to search was not voluntary, and that if the consent were voluntary, the officers exceeded the scope of that consent.

---

* Honorable Albert J. Engel, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

On the morning of February 18, 1992, Denver Police Detective Ayon received a call from the director of security at a Denver hotel. The director of security reported the following to Detective Ayon: 1) a strange guest, Mr. Gobey, had just checked into the hotel, requesting a top-floor room facing east; 2) the guest asked the bellhop for the location of the side exits from the hotel; 3) the guest's luggage included what appeared to be gun or rifle cases; 4) the guest had a pit bull with him; and 5) the guest had tacked a racist poster to his hotel room door.

Detective Ayon checked police records and learned that Mr. Gobey was believed to be associated with a white supremacist motorcycle gang and was to be considered armed and dangerous. Mr. Gobey's criminal record included felony menacing and various weapons charges. Detective Ayon also discovered that Defendant was wanted on an outstanding arrest warrant for failure to appear on a summons and complaint charging him with possession of an unlawful knife, in violation of a Denver ordinance. Detective Ayon consulted with Sergeant McNallis and they decided to arrest Defendant on the outstanding warrant. Because of Defendant's criminal history and gang affiliation, the officers decided to involve the Denver Metro SWAT Unit in the arrest. The SWAT Unit then contacted the United States Secret Service because of concern that Mr. Gobey might be planning an assassination attempt on Vice President Quayle, whose motorcade was to pass by the hotel later that day.

Secret Service Special Agent Hislop joined Detective Ayon and Sergeant McNallis at the hotel. The other officers present at the hotel were Sergeant Connors, Officer Sconce, and Technicians Berebach and Zimmerman. The team of officers set up a "command post" in room 1112, the room next to Mr. Gobey's room. Shortly thereafter, Detective Ayon, disguised in a room service jacket, knocked on defendant's door. Defendant, having been awakened by the knock, answered the door in his underwear and without his glasses. Technician Berebach grabbed Defendant and forced him face-down on the carpeted hallway while Special Agent Hislop handcuffed him.

The officers took Defendant next door to room 1112 and sat him on the bed. Detective Ayon immediately read him his *Miranda* rights. Mr. Gobey indicated that he understood his rights and wished to waive them. Although several officers were surrounding Defendant at this time, no weapons were brandished. Special Agent Hislop then began to talk to him. He explained that his job was to protect the Vice President and that the officers feared that Defendant might pose a danger to the Vice President. Mr. Gobey disavowed any intent to harm the Vice President. Agent Hislop then asked Defendant if the officers could search his hotel room and bags for persons or weapons that could harm the Vice President. Defendant consented to the search. He admitted that no one put a gun to his head, yelled at him, or otherwise threatened him.

The officers took Defendant back to his room, placed him on the floor in the center of the room, and commenced a search. Special Agent Hislop quickly found a gun holster and a clip containing rounds in one of the bags near the center of the room. Detective Ayon recovered from the other bag a three-beam scale with weights and a plastic bag containing a white powdery substance consistent in packaging and appearance with methamphetamine. When Detective Ayon discovered the drugs, "the defendant exclaimed to Agent Hislop, 'You fucked me over! Stop the search!'—or words to that effect." *United States v. Gobey*, No. 92 CR 93, slip op. at 6 (D.Colo. Sept. 12, 1992). The officers immediately halted the search. After obtaining a search warrant to continue searching without Mr. Gobey's consent, the officers discovered an automatic revolver under a chair cushion. Later, after being taken to the police station, Defendant signed a written *Miranda* advisement.

## I.

■ We first address Defendant's contentions that his consent to search was not voluntary and that the officers exceeded the scope of his consent. In their respective testimony, Defendant and the officers diverged in their recounting of the facts. Among other things, Defendant claimed that

he consented only to a search of his room for other persons—not a search of his room and bags for persons or guns. Based partially on credibility determinations, the district court adopted the facts as presented by the government and discredited Mr. Gobey's account. The court was particularly persuaded by the fact that Defendant perjured himself at one point during his testimony. Credibility determinations are within the sound discretion of the trial judge, and given our limited review, we cannot conclude that the district court's factual findings on these issues were clearly erroneous. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (holding that a reviewing court must give greater deference to a district judge's factual findings when the findings are based on credibility determinations).

## II.

■ Next, Defendant contends that the district court erred in holding valid the local arrest warrant used to arrest him. The district court held that the warrant sufficed under both Colorado law and the Fourth Amendment, but that it did not need to satisfy the requirements of the Federal Rules of Criminal Procedure.

■ We first address the issue of whether the warrant violated the Federal Rules of Criminal Procedure. The district court held that the warrant did not have to satisfy federal nonconstitutional standards because it was used in a "state" arrest. In reaching this conclusion, the court cited the significant involvement of state officials throughout the case. The issue of whether a warrant must satisfy federal standards, however, does not turn on the amount of state involvement. Rather, the amount of federal involvement is the determinative factor. *United States v. Bookout,* 810 F.2d 965, 967 (10th Cir.1987). Generally, a warrant is not federal in character if no federal agents participated in obtaining the warrant or in conducting the search. *See United States v. Millar,* 543 F.2d 1280, 1284 (10th Cir.1976) (state search where no federal official played any role in obtaining the warrant or assisting in the search; distinguishing cases finding "a feder-

al search because federal agents had participated in the search").

Here, the warrant was sought and obtained by state officials. However, Agent Hislop of the United States Secret Service played a significant role in the arrest, interrogation, and search. He helped plan the arrest (Appellant's App. at 81), and placed the handcuffs on Mr. Gobey during the arrest. (Appellant's App. at 82.) When Defendant was brought to Room 1112, Agent Hislop was the officer who conducted the interview and obtained Defendant's consent to search. Agent Hislop was one of the two officers who conducted the search of Defendant's bags. He discovered some of the incriminating evidence. Until it became clear that Defendant did not pose a threat to the Vice President, the primary purpose of the arrest and search was federal in nature—to avert a potential assassination. (Appellant's App. at 93.) Because Agent Hislop played a significant role in the arrest and search, the warrant used to secure Mr. Gobey had to satisfy federal standards. *See United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir. 1982).

Under Rule 4 of the Federal Rules of Criminal Procedure, a summons to appear may be issued to a defendant in lieu of an arrest warrant. Fed.R.Crim.P. 4(a). If the defendant fails to appear in response to the summons, an arrest warrant may be issued at that time. Fed.R.Crim.P. 4(a) advisory committee note. Under the federal rules, however, a summons cannot be issued in the first instance without probable cause, the decision of a neutral magistrate, and the requisite particularity. The summons in this case, which was ultimately converted in the "failure to appear" warrant used to arrest Mr. Gobey, did not meet these specifications; it was delivered directly to Defendant by the officer without the determination of a neutral magistrate, and there was never a determination as to probable cause. Therefore, Agent Hislop's significant participation, which subjected the arrest warrant to the requirements of the Federal Rules of Criminal Procedure, invalidated the warrant under Rule 4.

Because we hold that the arrest warrant did not comport with Federal Rules of Criminal Procedure, we need not reach the constitutional arguments raised by Defendant.

### III.

■ The next issue is whether the officers relied on the invalid warrant with a good faith belief that it was valid. The district court found that the officers acted in good faith, and under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), declined to apply the exclusionary rule. We cannot conclude that this factual determination was clearly erroneous. The state officers' conduct conformed with Colorado law and practice, and they clearly acted with a good faith belief in the legality of their actions. Whether Agent Hislop, the federal agent, acted in good faith presents a slightly different question. The agent should have been familiar with the Federal Rules of Criminal Procedure and should have known that the warrant had to satisfy the federal rules before he could make a significant contribution to the arrest and search. However, the state warrant was facially valid. For Agent Hislop to have determined that the warrant did not pass federal standards, he would have had to investigate and retrace the steps by which the warrant was issued. This process would have involved several complicated and time-consuming steps. Under the circumstances of this case we cannot say that it was unreasonable for him to rely on a facially valid state warrant without investigating its actual validity. The agent was concerned for the well-being of the Vice President and had to act quickly to ensure his safety. Thus, the district court's finding on this matter was not clearly erroneous.

In summary, we hold that Defendant's consent to search was voluntary. Defendant consented to the search of his room and bags for weapons or persons, and the officers did not exceed the scope of that consent. The arrest warrant relied on by the officers was invalid under the Federal Rules of Criminal Procedure. Because the officers relied on the warrant in good faith, however, the district court correctly declined to apply the exclusionary rule to the evidence seized.

The decision of the district court to deny the motion to suppress is AFFIRMED.