(93 P.3d 737)
No. 90,340

STATE OF KANSAS, *Appellee*, v. DANA MANSAW, *Appellant*.

1012

Opinion filed July 16, 2004.

*Rick Kittel,* assistant appellate defender, for appellant.

*Christopher L. Schneider,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., MALONE, J., and ERIC S. ROSEN, District Judge, assigned.

MALONE, J.: Dana Mansaw appeals his conviction for possession of cocaine. Mansaw claims that the district court erred by denying his motion to suppress evidence. The evidence was seized incident to Mansaw's arrest on a parole warrant which was later determined to be invalid. Mansaw also claims that the stipulated evidence was insufficient to sustain his conviction. Finally, Mansaw claims that the district court erred in denying his motion to dismiss based upon an alleged statutory speedy trial violation.

*Facts and procedural background*

Mansaw was initially convicted of attempted forgery in Wyandotte County, and on August 23, 2000, he was sentenced to 10 months in prison followed by 12 months' postrelease supervision. Mansaw was placed on probation, which was later revoked for conditional violations other than a new conviction. As a result of this revocation, on October 21, 2001, Mansaw was ordered to serve the remainder of his original sentence including the postrelease supervision.

On May 13, 2002, Mansaw was released from prison on postrelease supervision. He signed a certificate of release listing his

address as 2606 North Fifth Street, Kansas City, Kansas. The certificate stated the conditions of release, including reporting and a consent by Mansaw to a search of his person, residence, and property by parole officers.

On May 20, 2002, a warrant was issued by the Secretary of Corrections pursuant to K.S.A. 2003 Supp. 75-5217, ordering Mansaw's arrest for violations of the terms and conditions of his release. The warrant was issued "to any officer authorized by law to make arrests" and commanded that Mansaw be arrested, wherever found, and returned to the custody of the Kansas Department of Corrections (KDOC).

On June 5, 2002, two parole officers and a deputy U.S. Marshal arrested Mansaw at his residence based upon the warrant. Mansaw was searched, and a substance later determined to be cocaine was seized from his person.

Mansaw was charged with possession of cocaine in Wyandotte County District Court. He was arraigned on September 19, 2002, and trial was scheduled for December 2, 2002. At a status conference on November 26, 2002, the prosecutor announced he was ready for trial. Mansaw's counsel indicated he had a conflict with the December 2 trial date. The court suggested that the case be tried later in the week, but defense counsel was unavailable the entire week. Defense counsel indicated he was available the following 2 weeks, but that conflicted with the court's calendar. The court ordered a continuance based on the scheduling conflicts and set the trial for January 6, 2003.

Prior to trial, Mansaw filed a motion to suppress the evidence seized at the time of his arrest. At the hearing, Mansaw argued that pursuant to K.S.A. 2003 Supp. 22-3716(e), he should not have been placed on postrelease supervision upon his release from prison. Accordingly, Mansaw argued that his arrest warrant was invalid and that the search incident to the arrest was unlawful. Mansaw also filed a motion to dismiss, based upon an alleged statutory speedy trial violation. The district court denied both motions.

Mansaw decided to waive a jury trial and submitted his case to the court pursuant to a written stipulation of facts. Based upon the stipulated evidence, the district court found Mansaw guilty of pos-

session of cocaine in violation of K.S.A. 65-4160(a). Mansaw was sentenced to 30 months' incarceration. He timely appeals.

## Motion to suppress evidence

Mansaw argues the district court erred by denying his motion to suppress evidence. Specifically, he claims his placement in post-release supervision was an illegal sentence; thus, any violation of the terms of his postrelease supervision could not provide probable cause for a valid arrest warrant. Therefore, Mansaw claims the search of his person was not conducted incident to a lawful arrest.

The written stipulation of facts submitted by the parties did not indicate that Mansaw was preserving the objections raised in his suppression motion. Generally, when the district court has denied a motion to suppress evidence, the movant must object to the admission of that evidence at trial to preserve the issue for appeal. *State v. Saenz*, 271 Kan. 339, 349, 22 P.3d 151 (2001). In this case, however, the record reflects that the district court specifically advised Mansaw that he was not waiving his right to appeal the ruling on the suppression motion by agreeing to the trial upon stipulated facts. Accordingly, we find that Mansaw has properly preserved this issue for appeal.

When reviewing a motion to suppress evidence, an appellate court determines whether the factual underpinnings of the district court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. The appellate court does not reweigh the evidence. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001). When the facts material to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

Although the records of Mansaw's forgery case are not included in the record on appeal, the State is not disputing the background leading up to Mansaw's arrest. Mansaw was on probation following a conviction of attempted forgery. His probation was revoked for

violating conditions of the probation other than for a conviction of a new offense. Pursuant to K.S.A. 2003 Supp. 22-3716(e), Mansaw should not have been required to serve the postrelease supervision term of his sentence upon his probation revocation. The State does not contest this conclusion on appeal. Apparently the statutory provision was not brought to the court's attention at the time of the probation revocation, and the order remanding Mansaw to the custody of the KDOC included the postrelease supervision term as part of the sentence. Accordingly, when Mansaw became eligible for release on May 13, 2002, he was placed on postrelease supervision pursuant to the district court's order.

In denying Mansaw's motion to suppress evidence, the district court found that Mansaw's placement on postrelease supervision was valid because the initial order had never been canceled. Thus, the district court concluded that Mansaw's arrest warrant issued by the KDOC was lawful and upheld the search incident to the arrest.

We agree with the district court's analysis. Mansaw could have successfully challenged the imposition of postrelease supervision by a motion to correct an illegal sentence or an action pursuant to K.S.A. 2003 Supp. 60-1507. However, as the district court noted, at the time of Mansaw's arrest, there was still a valid court order imposing the obligation. The KDOC cannot ignore a district court's order. Mansaw's arrest warrant was properly issued pursuant to K.S.A. 2003 Supp. 75-5217, and the warrant remained active at the time of his arrest. A search incident to such an arrest does not become invalidated simply because the arrest warrant is subsequently subjected to a collateral attack.

The State also asks this court to uphold Mansaw's search based upon the rationale of *Michigan v. DeFillippo*, 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979). In *DeFillippo*, an officer arrested DeFillippo for violating an ordinance and found illegal drugs on his person during a search. DeFillippo's motion to suppress the seized evidence was denied. Upon interlocutory appeal, the state court held the ordinance that resulted in DeFillippo's arrest was unconstitutional and concluded the arrest and search were invalid. The United States Supreme Court granted the State's appeal. The

Court held that the subsequent determination of the ordinance's invalidity on constitutional grounds did not undermine the validity of the arrest for a violation of that ordinance. In determining that the evidence obtained in the search should not have been suppressed, the *DeFillippo* Court stated:

"Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." 443 U.S. at 38.

"The purpose of the exclusionary rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search. To deter police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the exclusionary rule." 443 U.S. at 38 n.3.

Applying the rationale of *DeFillippo*, officers are charged to enforce arrest warrants. The issuance of an arrest warrant forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a warrant so grossly and flagrantly unconstitutional that any reasonable person would see its flaws. Society does not benefit by officers taking it upon themselves to determine whether an arrest warrant is or is not entitled to enforcement. The purpose of the exclusionary rule was not to deter police from enforcing a presumptively valid arrest warrant.

*DeFillippo* was followed by *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), which expressly provided a "good faith exception" to the exclusionary rule for evidence obtained in reasonable reliance on a defective search warrant. In *Leon*, the district court suppressed evidence seized from the execution of a search warrant after determining that the affidavit submitted to support the warrant application was insufficient to establish probable cause. On certiorari, the United States Supreme Court held that the exclusionary rule does not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately

found to be unsupported by probable cause. 468 U.S. at 913-26. The Court relied upon policy rationale similar to the reasoning expressed in *DeFillippo*.

The *Leon* good faith exception has been adopted in Kansas. See *State v. Doile*, 244 Kan. 493, 501-03, 769 P.2d 666 (1989). Furthermore, the good faith exception for search warrants has been extended to arrest warrants by the United States Supreme Court in *Arizona v. Evans*, 514 U.S. 1, 131 L. Ed. 2d 34, 115 S. Ct. 1185 (1995).

In *United States v. Gobey*, 12 F.3d 964 (10th Cir. 1993), Gobey was arrested and searched by federal agents on a state arrest warrant. The arrest warrant was found to be invalid because it did not comport with Federal Rules of Criminal Procedure. See Fed. R. Crim. Proc. 4. However, the Tenth Circuit Court of Appeals determined that the agents acted in good faith in executing the warrant that was facially valid. In upholding the search, the court stated:

"For Agent Hislop to have determined that the warrant did not pass federal standards, he would have had to investigate and retrace the steps by which the warrant was issued. This process would have involved several complicated and time-consuming steps. Under the circumstances of this case we cannot say that it was unreasonable for him to rely on a facially valid state warrant without investigating its actual validity." 12 F.3d at 968.

See also *United States v. Mahoney*, 712 F.2d 956, 960-62 (5th Cir. 1983) (Even if arrest warrant was invalid, exclusionary rule was inapplicable where actions of state law enforcement agents were taken in reasonable and good faith belief that they were legal.).

Here, the district court did not expressly apply a good faith analysis to the officers' actions in arresting and searching Mansaw. However, we note that the evidence surrounding the search was essentially uncontroverted. The facts of this case are similar to the facts in *Gobey*. In arresting Mansaw, the officers were relying on a facially valid warrant. For the officers to have determined that the warrant was invalid, they would have had to investigate and retrace the steps by which the warrant was issued. This would impose an unreasonable requirement on the officers who were acting in good faith at the time of the arrest. We conclude that the good

faith exception to the exclusionary rule provides an additional basis for upholding the search of Mansaw's person after his arrest.

Finally, Mansaw argues that the KDOC may have had actual knowledge that Mansaw's postrelease supervision sentence was illegal. At the suppression hearing, the prosecutor speculated that the KDOC may have notified the district court by letter concerning the problem with Mansaw's sentence. On appeal, Mansaw argues that due to the alleged letter, the KDOC cannot claim to have had a reasonable belief that Mansaw violated his postrelease supervision. Mansaw further argues that this knowledge was imputed to the parole officers who executed the arrest warrant.

There is no such letter for our review in the record on appeal. However, even if the letter existed, the fact remained that the KDOC was obligated to obey the district court's sentencing order. The speculation about the existence of a letter from the KDOC to the district court does not change our analysis about the validity of the arrest warrant or the application of the good faith exception to the exclusionary rule.

For all the reasons stated herein, we conclude that the district court did not err in denying Mansaw's motion to suppress evidence.

### Sufficiency of the evidence

After the district court denied Mansaw's motion to suppress evidence, Mansaw decided to waive his right to a jury trial and to submit his case to the court based upon stipulated facts. Mansaw expressly took this action in order to preserve the suppression issues for appeal.

The parties submitted the following written stipulation of facts to the court:

"1. The testimony of Parole Officer Vic Harshbarger given to the court at the suppression hearing held on January 6, 2003, namely:

a. That on June 5, 2002, he, along with Parole Officer R.J. Cook and Deputy U.S. Marshal Steve Makurunis, went to 2606 North 5th Street, Kansas City, Kansas, to look for the defendant, for whom a parole warrant had been issued on May 20, 2002 (St. Exh. #1).

b. That relying on a Certificate of Release executed by the defendant (St. Exh. #2), the officers then entered the residence and detained an individual who matched the description of the defendant. This individual, who appeared to be

sleeping, advised the officers that his name was 'Mansaw' when they inquired of him. He later gave a different name.

c. The defendant's supervising parole officer, Christopher Langton, was summoned from the state parole office, in the 1100 block of North 5th Street, to identify the defendant. Upon Langton's arrival he indeed positively identified the person in custody as Dana Mansaw.

d. Mansaw was then searched and the substance admitted at the suppression hearing as State's Exhibit #3 was seized from his person.

"2. The substance contained in what was admitted at the suppression hearing as State's Exhibit #3 is indeed cocaine, as evidence by the K.B.I. Laboratory Report attached hereto. Exhibit #3 remains in the custody of the seizing agency pending further order of this court.

"3. The location where the cocaine was seized from the defendant, 2606 North 5th Street, Kansas City, Kansas, is in Wyandotte County, Kansas."

Based upon the stipulation of facts, the district court found Mansaw guilty of possession of cocaine. Prior to sentencing, Mansaw filed a motion for reconsideration, arguing that the stipulated facts were insufficient to show he intended to possess the cocaine. The district court denied the motion. Mansaw renews this argument on appeal.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, 610-11, 67 P.3d 121 (2003).

"Possession" is defined as "[h]aving control over a place or thing with knowledge of and the intent to have such control." PIK Crim. 3d 53.00. Knowledge of and intent to control an illegal drug may be proven by circumstantial evidence. *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 (1988).

Mansaw argues that criminal intent is an essential element of every crime. Here, the stipulated facts provide that Mansaw was searched and cocaine "was seized from his person." Mansaw argues this evidence was insufficient to support his conviction because the stipulation failed to indicate "that Mansaw was aware" of the presence of the cocaine.

We disagree. Intentional conduct is conduct that is purposeful and willful and not accidental. K.S.A. 21-3201(b). Mansaw's intent could be proved by circumstantial evidence and inferred from his actions. Ordinarily, a person intends all of the usual consequences of his or her voluntary acts. See *State v. Acheson*, 3 Kan. App. 2d 705, 710, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979). We are required to view the evidence in a light most favorable to the State. In the absence of any evidence that Mansaw's possession of cocaine was accidental, we find that the stipulated evidence was sufficient to support Mansaw's conviction for possession of cocaine.

## *Motion to dismiss*

Finally, Mansaw argues that the district court erred in denying his motion to dismiss based upon a violation of Mansaw's statutory speedy trial rights. The issue of whether a defendant's statutory rights to a speedy trial have been violated is a matter of law over which an appellate court has unlimited review. *State v. White*, 275 Kan. 580, 598, 67 P.3d 138 (2003).

Since Mansaw was in custody, he was entitled to a trial within 90 days of arraignment. K.S.A. 22-3402(1). Mansaw was arraigned on September 19, 2002, making his 90-day speedy trial deadline December 18, 2002.

Mansaw's trial was initially scheduled for December 2, 2002. At a status conference on November 26, 2002, the prosecutor announced that he was ready to proceed to trial as scheduled. Mansaw's counsel indicated he had a conflict with that date because of a trial scheduled in a different jurisdiction. The court suggested that the trial be commenced later in the week of December 2, but defense counsel was unavailable the entire week. Defense counsel indicated that he was available during the week of December 9 and December 16. However, the trial could not be scheduled during that time because of other trials scheduled on the court's calendar. Accordingly, the court rescheduled the trial on January 6, 2003, when both attorneys indicated they would be available. This date was 109 days after Mansaw's arraignment.

Although Mansaw's counsel ultimately objected to the trial continuance, it was initially necessitated by a conflict in defense coun-

sel's schedule. A trial continuance because defense counsel is either not ready or has conflicts in his or her calendar is appropriately charged against the defendant, not the State, for speedy trial purposes. *State v. Hemby*, 264 Kan. 542, 543-47, 957 P.2d 428 (1998); *State v. Bean*, 236 Kan. 389, 392, 691 P.2d 30 (1984). K.S.A. 22-3402(1) clearly provides for an extension of the speedy trial deadline when the delay is a result of the application or fault of the defendant.

Furthermore, the district court's continuance falls squarely within K.S.A. 22-3402(3)(d), which states:

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

. . . .

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

The phrase "not more than thirty (30) days" in K.S.A. 22-3402(3)(d) has been construed to mean "to a date not more than thirty days after the limit otherwise applicable." *State v. Coburn*, 220 Kan. 750, 753, 556 P.2d 382 (1976).

Here, the record clearly establishes that the district court did not have sufficient time to commence Mansaw's trial before the initial deadline because of other cases pending for trial. Accordingly, the court granted one continuance and still scheduled the trial within 30 days of the original speedy trial deadline. Mansaw's trial ultimately commenced within the time limits set by statute.

Mansaw presented evidence that after the district court granted the continuance, the trials which created conflicts with the court's schedule and defense counsel's schedule were ultimately settled. Thus, Mansaw argues that nothing prevented his trial from proceeding on December 2, 2002. He argues the district court or the State should have contacted him or his counsel and advised the trial could proceed as originally scheduled.

Mansaw's argument would unreasonably require the court and the parties to keep jurors and witnesses available after a continuance was granted just in case schedules subsequently changed.

Further, the record does not reflect that Mansaw's counsel informed the district court on December 2, 2002, that he was available for trial that day. As such, it would have been reasonable for the district court to continue to assume he was unavailable.

Mansaw's trial continuance was appropriate when initially granted. The fact that the district court's calendar subsequently changed does not matter. Accordingly, the district court did not err in denying Mansaw's motion to dismiss based upon the alleged statutory speedy trial violation.

Affirmed.