No. 48,254

STATE OF KANSAS, *Appellee*, v. FRANK COBURN, *Appellant*.

(556 P. 2d 382)

Opinion filed November 6, 1976.

*Ted Hollembeak,* of Steerman, Greiner and Roach, Chartered, argued the cause and was on the brief for the appellant.

*Philip E. Winter,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Michael G. Patton,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Frank Coburn was convicted by a jury of felony theft and has appealed. He raises what are essentially two issues, one relating to our speedy trial statute, the other going to the substance of the crime of theft as reflected in the instructions and proof.

Prior to his resignation in March, 1973, Coburn was the sheriff of Lyon county. When he left office he took with him two

pistols which had come into his possession during his tenure as sheriff under circumstances to be discussed later.

On May 7, 1973, a grand jury indicted him for the theft of the two pistols in the following language:

"The Grand Jury charges that on or about March 1, 1973, in Lyon County, Frank Coburn did, unlawfully and feloniously, with intent to deprive the owner permanently of. the possession, use or benefit thereof, obtain and exert unauthorized control over one (1) .38 cal. Colt Revolver, serial No. 553-202, and one (1) .25 cal. Wischo K G Automatic, serial no. 98-779, the same being lawfully in the custody of the Lyon County Sheriff's office, in violation of K. S. A. 1972 Supp. 21-3701 (a)."

On May 29, 1973, he was arraigned on the charge and pleaded not guilty. Defendant was at all times free on bond. Trial was set for October 25, 1973. On the latter date the trial court considered its calendar and concluded that because of other cases pending for trial it did not have sufficient time to commence trial within 180 days of arraignment. It therefore ordered the case continued for 47 days, to December 11, 1973.

Defendant did not agree to the order of continuance and on November 30, 1973, moved for discharge on the grounds that the 180 day period prescribed by K. S. A. 22-3402 (2) had expired.

The motion was overruled, the case went to trial beginning December 11, 1973, the date set, and resulted in a verdict of guilty as charged. This appeal followed.

Appellant's speedy trial argument is essentially this: subsection (2) of K. S. A. 22-3402 required his discharge unless he was brought to trial within 180 days of arraignment, "or a continuance shall be ordered by the court under subsection (3)."

Subsection (3) provides that the time for trial may be extended beyond the limitation otherwise applicable for any of several reasons, including:

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. *Not more than one continuance of not more than thirty days may be ordered upon this ground."* (Emphasis added.)

Appellant points to the last sentence of (d) and says that, although only one continuance on this ground was ordered, because the continuance was for more than 30 days he was entitled to be discharged.

The state counters by pointing out that trial was begun on the 196th day after arraignment, well within 30 days from the statute's normal 180 day limit. It contends that the underlying purpose of

subparagraph (*d*) was to place a 210 day outer limit on continuances granted because of the condition of the court's calendar, and that this purpose was more than fulfilled in the instant case.

We agree with the state. We have recognized that the statute represents a legislative effort to implement the speedy trial provisions of our constitutions. *State v. Davis,* 209 Kan. 225, 495 P. 2d 965. Rather than rely on the "balancing" tests employed in the absence of a statute (*cf. State v. Otero,* 210 Kan. 530, 502 P. 2d 763), the legislature has imposed strict standards which this court has not hesitated to enforce. *E. g., State v. Cox,* 215 Kan. 803, 528 P. 2d 1226; *State v. Sanders,* 209 Kan. 231, 495 P. 2d 1023. The statute, however, like any other statute, must be given a construction which is reasonable and which will carry out the legislative purpose without working an injustice to either the defendant or the state. (*Cf. Willmeth v. Harris,* 195 Kan. 322, 403 P. 2d 973.)

The basic question underlying this issue is the extent to which the statute was intended to govern the trial court's control of its docket. It seems apparent that within the outer limits prescribed no control was intended; by its terms, the statute has no applicability to trial settings or continuances granted within (in case of a defendant on bond) 180 days of arraignment. Until that date is reached the defendant has no speedy trial issue to raise under either our statute, or under the state or federal constitutions. Unless a continuance infringes upon the legislative limit it may be ordered as required by the exigencies of the trial court's docket; no limitation is applicable until the statutory limit is reached regardless of the reason assigned for the continuance. Thus, for example, if a trial court on the 30th day orders a 60 day continuance because of a crowded docket, the defendant has no cause to complain that the time exceeded 30 days.

Once the limit approaches, however, the trial court is faced with different problems. If the nearest practicable trial date is over the limit, the trial court is faced with two choices. It may fix a trial date within the statutory time limit, knowing the case cannot be then tried. Such an order, as pointed out above, regardless of the length of the continuance, does not call the statute into play. But when the date fixed arrives another continuance must be ordered, as the court well knew all along; so long as the second continuance does not exceed thirty days even the literal terms of the statute are not breached. In the alternative a trial

court can do as the trial court did here and fix a realistic trial date more than 30 days from the date of the order, but within thirty days of the statutory limit. Either way the ultimate trial date is the same, and is known to the trial court at the time of the original trial date.

In this case, then, under the first alternative the court on October 25, 1973, could have ordered a thirty-one day continuance to November 25, 1973, the 180th day; the defendant would have had no cause to complain that the continuance was for more than 30 days. It could then have ordered an additional 16 day continuance to December 11, 1973, the actual trial date, and been within the literal terms of the statute. Again the defendant would have had no cause to complain. Instead, the trial court followed the second alternative and made but one order, on October 25, fixing the December 11th date at the outset. It thereby did directly what it clearly could have done indirectly. To say that the direct approach deprived the defendant of his right to a speedy trial, while the indirect approach would not, seems a prime example of exalting form over substance. Under such reasoning a 30 day continuance on the 180th day is proper, but a 31 day continuance on the 179th is not, although the result is obviously the same. We cannot accept such a construction of the statute.

As we see it the statute was designed to accommodate the conflicting demands of speedy justice and crowded court calendars. A specific time limit to begin the trial is fixed, but one continuance caused by calendar congestion is permitted, of up to 30 days beyond the limit. We therefore construe the phrase "not more than thirty days" in K. S. A. 22-3402 (3) (d) to mean "to a date not more than thirty days after the limit otherwise applicable."

In this case the continuance was to a date 16 days after the applicable 180 day limit. The trial was therefore timely under the statute as we construe it, and the defendant was not entitled to be discharged.

Appellant's substantive issues deal with "ownership" as an element of theft. He asserts that the instructions did not require the state to prove who the "owner" of each pistol was, and that the evidence did not show that his control over the pistols was not authorized by the respective owners. The issues were raised below by objections to the instructions and by a motion for directed verdict.

The key to appellant's argument lies in the manner in which the

pistols came into his possession. The .38 Colt was found in a car occupied by two suspects arrested by appellant when he was sheriff. At that time both disclaimed ownership. Later they were released, and were told they would not be charged with unlawful possession of the pistol although, as felons, they were subject to such a charge if possession could be proved. At the time of their release they again disclaimed any interest in the gun—or at least any interest in taking it into their possession, thereby subjecting themselves to immediate rearrest. The appellant testified that one of the suspects said the gun was his, but that the appellant "could have" it and could take the gun and sell it. Thereafter appellant used the gun for target practice (as did the undersheriff) and in his official duties as sheriff until he resigned. He took it with him when he left office.

The .25 automatic had been used by a young man to commit suicide in 1970. It, along with other property, was picked up by the appellant in the course of his official investigation of the shooting. When the investigation was complete appellant attempted to return all the property to the boy's parents, but was told by the father that he "had no use for" the gun and that he "did not want" the gun. There was testimony that appellant thereafter carried this gun when on duty, and he testified that he kept it at home.

K. S. A. 21-3701 defines the offense of which appellant was convicted:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

"(a) Obtaining or exerting unauthorized control over property; . . ."

The general definition section of our criminal code, K. S. A. 21-3110, provides:

"(13) 'Owner' means a person who has any interest in property."

It was appellant's theory that he came into possession of both guns from "owners" who did not want them, and that his exercise of control over them (even after he ceased being sheriff) was therefore not "unauthorized." The state's theory, on the other hand, was that the county (through the sheriff's office) had a superior possessory interest in the guns which made *it* their "owner." Hence the charge in the indictment that the guns were "lawfully in the custody of the Lyon County Sheriff's office" when the unauthorized control was alleged to have been exerted.

In accordance with his theory appellant objected to the court's

theft instructions because they did not require the state to prove who the individual "owners" of the guns were, or that he acted without the authority of those individuals. The instructions given were in the following form:

"The defendant is charged with the crime of theft of a .38 cal. Colt Revolver and a 25 cal. Wischo K G Automatic. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"1. That someone other than defendant was the owner of the property;

"2. That the property was in the lawful custody of the Lyon County Sheriff Department, which had a greater right to possession than the defendant.

"3. That the defendant obtained and exerted unauthorized control over the property;

"4. That the defendant intended to deprive the owner or owners permanently of the use and benefit of the property; and

"5. That this act occurred on or about the 1st day of March, 1973, in Lyon County, Kansas."

Separate but similar instructions were given as to each pistol individually, thus permitting the jury to find the defendant guilty as to either or both, as well as not guilty.

We think the instruction given properly reflected the appropriate elements of theft. The essential elements applicable here are: (a) the requisite intent; (b) the exertion of control; and (c) the lack of authority from the owner. There is no issue here about (a) or (b) either in the instructions or the proof. The only question is whether the county's possession was sufficient to make it the owner, in which case the defendant's control was clearly unauthorized, or whether the individuals having legal title were the owners, in which case defendant could argue that he did have authority from the owners.

Our present statute consolidates a number of former crimes dealing with obtaining property by dishonest means, including larceny and embezzlement. (See the Judicial Council note appended to the statute.) Historically larceny was an offense against another's superior possessory interest in personal property. Although in a larceny prosecution it was necessary to specify in the charge who the "owner" was, the owner named need not have legal title so long as he had the requisite superior right of possession.

Thus in *State v. Pigg*, 80 Kan. 481, 103 Pac. 121, it was held that one may be guilty of stealing from a thief, and the first thief was properly named as the "owner" of the property in the charge. In *State v. Bartholomew*, 116 Kan. 590, 227 Pac. 366, a servant of

the legal owner in temporary possession of an automobile was held to be its "owner" for the purpose of charging a larceny. In *State v. Urban,* 117 Kan. 130, 230 Pac. 77, a farm tenant was held to be an "owner" of harness that came with the farm, and an information charging larceny from him was sufficient. And in *State v. Hubbard,* 126 Kan. 129, 266 Pac. 939, it was held that a pledgee was an "owner" so that a taking from his possession without permission was larceny, even when committed by the holder of legal title to the property taken. Each case illustrates that it is the superior right of possession of the victim that makes him an "owner," and not the legal title.

The same rule is currently followed in Illinois, from whose code we adopted our present statute with only minor modifications. The general rule is put this way:

"Theft is the taking of property without the owner's consent. Ownership of some form of possessory interest in someone other than the defendant is an essential element of the offense and must be alleged and proved. [Citation omitted.] . . . One of the purposes of the requirement is to adequately inform the defendant of the charges against him and to protect him from possible double jeopardy. [Citation omitted.]" (*People v. Sims,* 29 Ill. App. 3d 815, 817, 331 N. E. 2d 178.)

See, also, *People v. McAllister,* 31 Ill. App. 3d 825, 334 N. E. 2d 885, and cases cited therein.

That "ownership" under a statute like ours does not mean legal title is illustrated by *People v. Traylor,* 26 Ill. App. 3d 687, 325 N. E. 2d 383:

"Theft conviction requires proof of ownership *or 'some sort of superior possessory interest' in one other than accused,* and this element may be proved by circumstantial evidence."

"Evidence that complainant owned television set and loaned it to brother-in-law who had *set inside car at time prior to its theft,* and theft accused offered no contrary evidence, nor did he contend at bench trial that his claim to possession was superior to that of complaining witness, was sufficient to support conclusion that *accused had no possessory interest superior to that of complaining witness,* so that requisite proof of ownership *or superior possessory interest* in object allegedly stolen, as element of theft conviction, would be established." (Official Abstract of Decision, para. 3 and 4. Emphasis added.)

In this case the instruction given required the jury to find that the pistols were not the property of the defendant, and that the Lyon County Sheriff Department "had a greater right to possession than the defendant." We think this was a sufficient definition of "ownership" in the county, comporting with our statutory definition of an owner as one who has "any interest in property."

Of course, whether the sheriff's department had a superior possessory interest depends on the interpretation given to the conduct of the holders of the legal title to the two guns. The defense theory seems to have been that when they relinquished their possessory rights to him they dealt with him as a private individual, rather than in his official capacity as sheriff. If he was acting in an official capacity, then the guns came into possession of the public entity he represented. K. S. A. 22-2512 provides that property validly seized by any peace officer, with or without a warrant, shall be kept by him until it is no longer required as evidence. Then, under subsection (3), if it is unclaimed it is to be sold by the sheriff at public sale and the proceeds paid into the county general fund. Under subsection (5), firearms which have been used in the commission of a crime are to be returned to the owner, destroyed, or sold, in the discretion of the court. In neither event do the seized articles become the personal property of the seizing officer.

Compare K. S. A. 13-14a02 and 14-10a02, dealing with the disposition of unclaimed property in the hands of certain police departments. And *cf., Noble v. City of Palo Alto,* 89 Cal. App. 47, 264 Pac. 529, holding that even in the absence of a statute or ordinance police officers have a duty to preserve property they find abandoned and to remit to the public treasury the proceeds from the sale of such property; *Majewski v. Farley,* 203 App. Div. 77, 196 N. Y. S. 508, imposing the same duty under a city charter, even as to property found in the city streets by a policeman who was off duty and not in uniform.

In this case whether the two felons and the father of the suicide victim meant to make personal gifts to the sheriff was resolved by the jury's verdict. Although the jury was not specifically instructed as to the sheriff's duties under K. S. A. 22-2512, the finding of guilt necessarily found a superior possessory interest in the governmental agency the sheriff represented. That finding is adequately supported by the evidence.

The judgment is affirmed.

APPROVED BY THE COURT.