No. 122,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TONY LEE FOSTER,
*Appellant*.

SYLLABUS BY THE COURT

1.

The crowded docket exception in K.S.A. 2020 Supp. 22-3402(e)(4) encompasses both the reason the court must change a trial date as well as the reason it cannot be rescheduled within the speedy trial deadline.

2.

A party must make a timely and specific objection to the admission of evidence at trial to preserve the issue for appeal. Without a specific objection, we have no particularized findings to review on appeal and thus cannot determine whether the district court erred.

3.

Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires a party to explain why this court should consider a constitutional challenge for the first time on appeal. A party must offer more than a conclusory, unsupported statement to satisfy its burden in this regard.

1

4.

The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, an appellate court has no obligation to do so.

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed June 11, 2021. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

CLINE, J.: A jury convicted Tony Lee Foster of reckless murder in the second degree and criminal possession of a weapon. He raises three claims of reversible error in his direct appeal. First, he contends that the district court misused the "crowded docket" provision in Kansas' speedy trial statute to continue his trial. Second, he believes the district court erroneously admitted his interrogation video at trial. Finally, he raises a constitutional challenge to the statute underlying one of his convictions. We find the crowded docket provision encompasses situations in which the court continues a trial for reasons unrelated to a crowded docket but cannot reschedule it within the speedy trial deadline because of the court's crowded docket. We also find Foster has failed to preserve his remaining arguments for appellate review. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 2018, Shannon Allison was living in a garage at her mother's house in north Topeka. The house was unoccupied at the time. One of Allison's friends, David Payne, stopped by several times that day, looking for her ex-boyfriend, Joshua Anno. A

few days earlier, Anno and Payne had discussed meeting up at Allison's so Anno could purchase a moped motor from Payne. During one of Payne's visits that day, he spent several hours removing a window air conditioner unit from the house so Allison could use it in the garage. Payne felt the garage where Allison was staying was too hot. After he removed the unit, Payne placed it on a chair in the garage.

Around midafternoon, Anno came by the house to mow the grass and meet up with Payne. When Anno arrived, no one was home. Allison returned just as he finished mowing. They both went inside the garage, at which point Anno fell asleep in a chair by the air conditioner. When Anno awoke, Foster was there, talking with Allison. Foster and Allison were in a dating relationship at the time, and they share children.

Soon after, Anno called 911 to report a shooting at the property. He denied knowing who the shooter was. Payne was the victim, and he died later that evening.

The police spoke to both Allison and Anno at the scene. Foster was not present. They told police they were in Allison's garage when they heard a pop outside. When they came out, they saw Payne on the ground. Both Allison and Anno said they did not see who shot Payne.

The police took Allison and Anno to the law enforcement center for further questioning. During transport, Anno told police he thought Foster may have shot Payne. When interviewed at the law enforcement center, Anno said he, Allison, and Foster were sitting in the garage when Payne approached outside. Anno called out to ask who it was, and Payne identified himself as "David." Foster asked if he was the same person who took an air conditioner unit out of the house. Anno then described Foster pulling out a revolver and firing one shot at Payne. Anno clarified he did not see the shooting because he was looking for his phone, but he saw Foster with a gun and heard him fire it. Anno ran outside and found Payne nonresponsive. Anno explained that he did not identify

Foster as the shooter to the 911 operator because Foster was standing next to him when he called.

In her interview at the law enforcement center, Allison said she and Anno were in her garage when they heard a bang outside. She first said she did not know who shot Payne. After the detective said he knew Foster was in the garage, Allison admitted Foster was there and had arrived shortly before the shooting. At some point, Detective Jesse Sherer, who also interviewed Anno, entered Allison's interview. Detective Sherer asked Allison why Foster shot Payne. Allison said it was an accident, claiming, "'He did not mean to.'" She said before the shooting, Foster asked whether Payne was the person who had caused problems over the air conditioner. Allison also admitted she grabbed the gun from Foster's hands before setting it on a bed.

Later that day, the police found Foster and arrested him. Detective Sherer interviewed Foster. At first, Foster denied knowing Payne or being present. When Detective Sherer told Foster witnesses placed him at the scene, Foster admitted he was with Allison in her garage when they heard a gunshot outside. He denied shooting Payne or possessing a gun.

The State charged Foster with intentional murder in the second degree or, in the alternative, reckless murder in the second degree. The State also charged Foster with one count of criminal possession of a firearm.

The parties appeared for trial on March 11, 2019. Upon their arrival, the district court informed them it had mistakenly failed to summon jurors for the week. Unfortunately, there were no available jury trial settings before Foster's speedy trial deadline of April 5, 2019. Relying on the crowded docket provision in K.S.A. 2020 Supp. 22-3402(e)(4), the district court continued the trial to April 8, 2019, over Foster's

4

objection. When Foster's speedy trial deadline arrived, Foster moved to dismiss on speedy trial grounds. The district court denied the motion.

Before trial, Foster moved to preclude Detective Sherer's videotaped interview of Foster, which he characterized as "continually comment[ing] on the credibility of suspects and witnesses." The district court ordered the State to redact certain portions of the video but denied Foster's generic objection to the entire video.

Both Allison and Anno testified at trial that Foster shot Payne. Jeffrey Parsons, an inmate at the Shawnee County Jail, also testified for the State. Parsons testified that, the day after the shooting, Foster approached him and told Parsons that he "'caught a bad motherfucker.'" Parsons explained that in jail this phrase means he "caught a bad case." Parsons testified Foster also told him that he shot someone and threw the gun by the house.

The jury found Foster guilty of reckless murder in the second degree and criminal possession of a weapon.

On appeal, Foster claims the crowded docket exception does not apply to his trial continuance, because the court continued the trial for lack of jurors, not a crowded docket. He also challenges the admission of his interrogation video, claiming it constituted impermissible comment on his credibility. Last, he raises a constitutional challenge to the statute underlying one of his convictions. We do not find Foster's arguments persuasive.

ANALYSIS

*The district court properly used the crowded docket exception in the speedy trial statute.*

Kansas law mandates that a defendant held in jail on criminal charges "be brought to trial within 150 days after such person's arraignment on the charge." K.S.A. 2020 Supp. 22-3402(a). Otherwise, the defendant "shall be entitled to be discharged from further liability to be tried for the crime charged." K.S.A. 2020 Supp. 22-3402(a). Kansas' speedy trial statute includes certain exceptions which toll this deadline. Here, the district court relied on the one commonly known as the "crowded docket" exception. This exception grants the district court a one-time opportunity to extend the time for trial when, "because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial." K.S.A. 2020 Supp. 22-3402(e)(4). A court may not delay a trial longer than 30 days under this provision. K.S.A. 2020 Supp. 22-3402(e)(4).

Foster's trial was originally set within his speedy trial deadline. Unfortunately, trial could not proceed as scheduled because the court failed to summon jurors. The court also could not commence Foster's trial before his speedy trial deadline of April 5, 2019, because of other matters already scheduled. Relying on the crowded docket exception, the district court extended the time for Foster's trial to April 8, 2019. This continuance was less than 30 days.

Foster claims the district court violated his statutory right to a speedy trial when it continued his trial beyond April 5, 2019. He argues the crowded docket exception applies only when the court's crowded docket is the reason for the continuance. We exercise unlimited review over a district court's legal rulings regarding violations of a defendant's statutory right to a speedy trial, as well as interpretation of statutes. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

Sections (a) through (d) of K.S.A. 2020 Supp. 22-3402 establish specific deadlines for the court to bring a defendant to trial. Section (e) of K.S.A. 2020 Supp. 22-3402 balances those deadlines against the practical realities of litigation by recognizing four situations in which the court may extend those deadlines for limited periods of time. One of the situations the Legislature anticipated is a district court's crowded docket. Section (e)(4) tolls the speedy trial deadline for a short time (up to 30 days) when a court's docket cannot accommodate another trial setting within that deadline.

We decline to read this provision as narrowly as Foster advocates. The language of K.S.A. 2020 Supp. 22-3402(e)(4) is unambiguous. We cannot read words into the statute or delete them from it. *In re Fairfield*, 27 Kan. App. 2d 497, 499, 5 P.3d 539 (2000). The Legislature did not limit application of this provision to only those situations in which a court must continue a trial because of a crowded docket. If that were its intention, it might have said: "[B]ecause of other cases pending for trial, the court must continue the trial" or "the trial must be continued." Instead, it said: "[B]ecause of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the [speedy trial deadline]." K.S.A. 2020 Supp. 22-3402(e)(4). The statutory language is broad enough to encompass both the reason the court must change a trial date as well as the reason the court cannot reschedule it within the speedy trial deadline.

The speedy trial statute, like any other statute, must be given a reasonable construction which will carry out the legislative purpose without working an injustice to either the defendant or the State. *State v. Coburn*, 220 Kan. 750, 752, 556 P.2d 382 (1976). Foster's interpretation of the crowded docket exception would require the district court to overburden its already crowded docket by setting a trial sometime before the speedy trial deadline—one which the court already knows would not likely proceed—just so the court could continue the trial once more, to the date it originally had in mind when the situation first arose. Our Supreme Court pointed out the absurdity of this exercise in *Coburn*, 220 Kan. at 752-53. We see no need to unnecessarily enlarge the business of the

court and overburden the parties, counsel, and witnesses (who must still be prepared to proceed on the phony trial date). As in *Coburn*, we believe the crowded docket exception allows the district court to directly address its crowded docket when rescheduling the trial, rather than requiring it to indirectly do so. 220 Kan. at 753.

We do not believe our interpretation of the crowded docket exception will be the harbinger of abuse Foster claims. While it provides district courts some flexibility to accommodate their demanding dockets, it also protects a defendant's important speedy trial right by limiting the duration of this tolling provision to 30 days and by only allowing a court to use it once. Further, whatever the (presumably legitimate) reason for a trial continuance, the record must still establish the court cannot accommodate a new trial date within the speedy trial deadline before the provision can apply. Cf. *State v. Queen*, 313 Kan. 12, 22, 482 P.3d 1117 (2021).

Another panel of this court has interpreted the crowded docket exception the same way we do, under almost identical circumstances. In *State v. Hadrin*, No. 112,736, 2016 WL 197775 (Kan. App. 2016) (unpublished opinion), the district court had to continue Jesse Hadrin's trial because the court had not summoned enough jurors. Hadrin's initial trial date was May 12, 2014. The district court was unable to reschedule Hadrin's trial before his May 19 speedy trial deadline because it had another trial scheduled. The court rescheduled the trial to May 27, 2014, citing the crowded docket exception to the speedy trial rule. On appeal, Hadrin made the same argument as Foster—the reason for the continuance was the unavailability of jurors, not a crowded docket, so the exception did not apply. This court rejected Hadrin's argument, recognizing K.S.A. 2020 Supp. 22-3402(e)(4) permitted the court to set the trial outside the speedy trial deadline due to its scheduling conflict after the discovery of the juror shortage. 2016 WL 197775, at *6.

We also addressed a similar issue in *State v. Mansaw*, 32 Kan. App. 2d 1011, 93 P.3d 737 (2004), *aff'd and adopted* 279 Kan. 309, 109 P.3d 1211 (2005). In *Mansaw*, the court originally scheduled the defendant's trial for December 2, 2002. His speedy trial deadline was December 18, 2002. At a status conference on November 26, 2002, Mansaw's counsel announced it had a conflict with the trial date. Defense counsel was available during the weeks of December 9 and December 16, but the court's docket was already full during that time. The court rescheduled the trial to January 6, 2003, 109 days after Mansaw's arraignment. While defense counsel objected to the extension, this court found the continuance fell within the crowded docket exception, since the district court lacked sufficient time to commence Mansaw's trial before the initial deadline because of other cases pending for trial. 32 Kan. App. 2d at 1020-21. Our Supreme Court adopted and affirmed this court's determination that Mansaw's speedy trial rights were not violated, showing its agreement with our interpretation of the crowded docket exception. 279 Kan. 309.

Our Supreme Court recently noted in *Queen*, 313 Kan. at 20, "the district court must extend or continue the time" for trial, for the crowded docket exception to apply. Just like in *Mansaw* and *Hadrin*, the district court did not continue Foster's trial because of a crowded docket, but the court extended the time for trial because of it. Thus, the crowded docket exception applies. The district court did not err in relying on it when rescheduling Foster's trial date.

*The court properly admitted Foster's redacted interrogation video.*

Before trial, Foster moved to preclude the State from introducing "any and all testimony, reports, video or audio recording that tend[ed] to comment, bolster or disparage the character or credibility of witnesses or the defendant." He specifically referenced Detective Sherer's interview of Foster, which he characterized as inappropriate comment on Foster's credibility and inadmissible under *State v. Elnicki*, 279 Kan. 47, 105

9

P.3d 1222 (2005). He asked the State to redact any statements commenting on the credibility of the witnesses or Foster from any videos it intended to introduce. In response, the State prepared a redacted video of Foster's interview. While Foster conceded the State's redactions eliminated all direct comments on witness credibility, he still claimed the "totality of [Detective Sherer's] comments [was] inappropriate opinion of the credibility of witnesses."

At a hearing on Foster's motion, the State's attorney mentioned he contacted Foster's attorney and asked which specific statements in the video Foster still found objectionable. Foster's attorney said he did not know if it was possible to redact the video because "the whole tenor of Detective Sherer throughout that interview [was] sarcastic" and the detective "implicitly indicated that he did not believe anything that Mr. Foster [was] saying." The district court noted the difficulty created by Foster's generic objection. The redacted version of Foster's interrogation video is 17 minutes and 41 seconds long. The district court said it would help to know the specific statements about which Foster had an objection. After the hearing, Foster's counsel e-mailed objections to two specific portions of the video.

When addressing Foster's general objection to the video in its written opinion, the district court said the "area of the general objections to all of the detective's statements is difficult for the court to review and examine." While the court did review the video multiple times and tried to identify Foster's areas of concern, the court "[did] not believe it [was] required to go through each and every statement without more specific objections and support from the Defendant." Ultimately, the court ordered the State to redact the two comments in the video to which Foster specifically objected as well as one other comment.

At trial, Foster renewed his general objection to the entire interview, stating it was an improper and sarcastic commentary on Foster's credibility. The district court overruled the objection and admitted the video.

On appeal, Foster offers new objections to specific portions of the video, while also claiming "the improper attacks on Mr. Foster's credibility so permeated the video, there was no amount of redaction that could save it." The insurmountable problem Foster faces on appeal is he did not preserve objections to any specific comments in the video which were unredacted. While both the State and the district court requested specifics from Foster as to his objections to the video, he only identified two statements. Those statements were redacted before the State introduced the video at trial. And when the State introduced the video at trial, Foster only repeated his general objection to the entire video. We cannot consider any of the objections to specific statements in the video which Foster now raises on appeal because he failed to provide the district court the opportunity to address them.

A party must make a timely and specific objection to the admission of evidence at trial to preserve the issue for appeal. *State v. Richmond*, 289 Kan. 419, 428, 212 P.3d 165 (2009). Without a specific objection, we have no particularized findings to review on appeal and thus cannot determine whether the district court erred. Similarly, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. 289 Kan. at 428-29. Allowing a party to raise evidentiary objections for the first time on appeal conflicts with the appellate court's function, which is that of review rather than trial de novo. *State v. Freeman*, 195 Kan. 561, 564, 408 P.2d 612 (1965).

While we cannot consider Foster's new challenges to specific portions of the video, we can consider his objection to admission of the video as a whole. Foster claims Detective Sherer impermissibly commented on Foster's credibility by "(1) making

11

express statements that Mr. Foster was not telling the truth; (2) employing a sarcastic and argumentative tone throughout the interrogation; and (3) using body language that demonstrated his disgust with Mr. Foster's version of events."

Since Foster has waived his first argument (regarding specific statements), we can only consider whether Detective Sherer's tone and body language amounted to impermissible comment on the credibility of another witness. A district court "has no discretion on whether to allow a witness to express an opinion on the credibility of another witness." *Elnicki*, 279 Kan. at 53-54. We review this issue de novo. 279 Kan. at 51.

First, Foster's reliance on *Elnicki* is misplaced. *Elnicki* involved objections to specific statements, rather than the generalized objection Foster raised below. Next, *Elnicki* does not address sarcasm or body language; *Elnicki* involved repeated accusations that the defendant was a liar. 279 Kan. at 57 ("The jury heard a law enforcement figure repeatedly tell Elnicki that he was a liar; that Elnicki was 'bullshitting' him and 'weaving a web of lies.' The jury also heard the same law enforcement figure suggesting he could tell Elnicki was lying because Elnicki's eyes shifted.").

The only other case Foster cites in support of his proposition that "overly sarcastic and argumentative questioning is not condoned" involves prosecutorial misconduct. See *State v. Edgar*, 281 Kan. 47, 68, 127 P.3d 1016 (2006). Prosecutorial error cases involving improper comments on witness credibility are informative, since prosecutors are also prohibited from directly commenting on witness credibility. *State v. Hirsh*, 310 Kan. 321, 342, 446 P.3d 472 (2019) ("We have repeatedly said that a prosecutor telling a jury in opening statement or closing argument that a witness told the truth is error."); *Elnicki*, 279 Kan. at 63-64 (holding prosecutor erred by repeatedly referring to defendant's story as a "'fabrication'" and a "'yarn'"). That said, we do not find Detective Sherer's tone and body language crossed the line.

12

While it is true the Supreme Court did not condone the prosecutor's statements in *Edgar*, it also found no misconduct in the prosecutor's "overly sarcastic and argumentative questioning" because the prosecutor's questions were relevant and limited to the evidence presented at trial. 281 Kan. at 68. "Although sarcasm may be used as an occasional rhetorical device, it cannot be used in such a way that it distracts the jury from its charge, demeans the adversarial trial process, or becomes unprofessional to the point of jeopardizing a verdict." *State v. Robinson*, 306 Kan. 431, 441, 394 P.3d 868 (2017). In *State v. Longoria*, 301 Kan. 489, 526, 343 P.3d 1128 (2015), the Kansas Supreme Court held that a prosecutor "came dangerously close to crossing the line" in using sarcasm where he suggested that rather than be killed by the defendant, a UFO or a mystery man could have abducted the victim. Yet the prosecutor's sarcasm was permissible because it stemmed from the evidence and was used to highlight weaknesses in the defense's theory. 301 Kan. at 523, 526.

Detective Sherer's behavior in this video is not on par with direct and repeated accusations that the defendant is a liar, as in *Elnicki*. His use of sarcasm was limited to the scope of the investigation and employed to highlight weaknesses in Foster's statements. His isolated gestures were not unprofessional, distracting, or otherwise improper. We find no error in the district court's admission of the videotaped interview.

*Foster failed to adequately support his constitutional challenge to K.S.A. 2020 Supp. 21-6304(a)(2).*

Finally, Foster raises a constitutional challenge to K.S.A. 2020 Supp. 21-6304(a)(2), which criminalizes possession of a firearm by a convicted felon. He argues this statute violates section 4 of the Kansas Constitution Bill of Rights because, while section 4 allows limits on the *use* of a firearm, it places no limits on the *possession* of a firearm. According to Foster, since K.S.A. 2020 Supp. 21-6304(a)(2) criminalizes

13

possession of a firearm for certain individuals, it conflicts with section 4 and infringes on the right to possess a firearm guaranteed by the Kansas Constitution Bill of Rights.

While Foster did not raise this issue below, he argues this court can still consider it. Generally, Kansas courts do not consider constitutional issues raised for the first time on appeal. There are exceptions to this rule, which include: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). "But just because an exception may permit review of an unpreserved issue, this alone does not obligate an appellate court to exercise its discretion and review the issue." *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so. *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020).

Foster says the first two exceptions apply here, but he offers only conclusory analysis and provides no legal support for his assertion. Issues not adequately briefed are deemed waived or abandoned. This includes "'point[s] raised only incidentally in a brief but not argued there.'" *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (citing *State v. Logsdon*, 304 Kan. 3, 29, 371 P.3d 836 [2016], and *National Bank of Andover v. Kansas Bankers Sur. Co.*, 290 Kan. 247, 281, 225 P.3d 707 [2010]). Further, if we allow routine claims of exceptions, like Foster's, those exceptions will swallow the rule and effectively render it meaningless.

Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) imposes on Foster the burden to explain why this court can consider his argument for the first time on appeal. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). He did not carry his burden

and, thus, has waived the issue. *Bone v. State*, No. 119,371, 2019 WL 2147711, at *3 (Kan. App. 2019) (unpublished opinion) ("Because Bone provides no more than an unpersuasive and conclusory justification for this court to consider his claims for the first time on appeal, we find that Bone has waived or abandoned these claims."). Our Supreme Court's rules and precedent firmly place the burden to justify consideration of an issue for the first time on appeal upon the party who newly raises the issue. We disagree with the concurrence's shifting of that burden from the party onto this court.

We recognize our colleague reads Foster's brief differently than we do and desires to address his newly raised constitutional challenge. However, we decline to consider the challenge because we believe it is important for parties to first raise and develop a record regarding their issues, particularly nuanced constitutional issues such as this one, in the district court. We disagree with the concurrence's assertion that this issue has been festering in the district court. That is the problem. It hasn't been. Appellants have only been raising this issue for the first time on appeal.

Our court has repeatedly turned away unpreserved constitutional challenges to K.S.A. 2020 Supp. 21-6304 on prudential grounds because, despite repeated admonishments, appellants failed to raise the issue below. See, e.g. *State v. Valdez*, No. 121,053, 2021 WL 1324023, at *3 (Kan. App. 2021) (unpublished opinion) ("evaluating such a challenge for the first time on appeal would require factual, legal, and historical analysis not found in this record"), *petition for rev. filed* May 5, 2021; *State v. Miner*, No. 122,372, 2021 WL 401282, at *2 (Kan. App. 2021) (unpublished opinion) (noting failure to challenge constitutionality of probation condition prohibiting possession of a firearm below "deprived the trial judge of the opportunity to address the issue in the context of this case" which "analysis would have benefitted [appellate] review"), *petition for rev. filed* March 8, 2021; *State v. Pugh*, No. 120,929, 2021 WL 218900, at *5 (Kan. App. 2021) (unpublished opinion) ("Because Pugh failed to raise this issue at trial, there is a lack of evidence in the record to supply this court a sound

15

foundation for meaningful review."); *State v. Tucker*, No. 121,260, 2020 WL 7293619 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* January 11, 2021; *State v. Johnson*, No. 121,187, 2020 WL 5587083, at *5 (Kan. App. 2020) (unpublished opinion) ("Though the ultimate decision as to whether a law infringes some constitutional provision is a question of law, constitutional questions—especially novel claims that have not been before considered—often involve considerable factual development and require the determination of multiple legal questions along the way."), *rev. denied* 313 Kan. __ (April 23, 2021). We decline to consider the merits of Foster's constitutional challenge for the same reason.

Affirmed.

* * *

ARNOLD-BURGER, C.J, concurring:  The majority follows the lead of two other panels of this court by failing to consider a constitutional challenge to K.S.A. 2020 Supp. 21-6304(a) raised for the first time on appeal. See *State v. Pugh*, No. 120,929, 2021 WL 218900 (Kan. App. 2021) (unpublished opinion); *State v. Johnson*, No. 121,187, 2020 WL 5587083 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. __ (April 23, 2021). I believe we should consider Foster's claim. But I concur in the ultimate result reached by the majority because I believe the claim fails on the merits.

*Foster properly asserted an issue for the first time on appeal, and we should consider it.*

Generally, Kansas courts do not consider constitutional issues raised for the first time on appeal. There are exceptions to this rule, which include:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for

16

the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). When an issue was not raised in the district court, "there must be an explanation why the issue is properly before the court." Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36). And to be properly before the court the appellant must establish that one of the recognized exceptions applies, and the court must agree that at least one of the court-recognized exceptions applies to justify considering the claim. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (directing parties who wish to raise an issue for the first time on appeal to explain why the issue is properly before this court by arguing one of the listed exceptions).

Although I agree with the majority that our Supreme Court made it clear in *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017), that the decision to consider an issue for the first time on appeal is a prudential one, cases from the Supreme Court that have been decided since *Parry*—where the appellant did list an exception as required but the court declined to consider the issue—appear to rely on clear reasons for such declination. See *State v. Queen*, 313 Kan. 12, 26, 482 P.3d 1117 (2021) (disagreeing that the issue presented a pure question of law); *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (finding that failure to raise issue below deprived trial judge opportunity to address the issue and such an analysis would have benefitted appellate review); see also *State v. Magee*, No. 122,373, 2021 WL 2171505, at *3 (Kan. App. 2021) (unpublished opinion) (noted only because it was decided by the same panel as here, disagreed that fundamental right was at stake and found that the appellant would have another opportunity to raise the issue before district court if the court incarcerated the defendant for failing to pay a fine). But see *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019) (no reason given for not considering claim even though exception argued by appellant); *State v. Robinson*, 306 Kan. 1012, 1026, 399 P.3d 194 (2017) (same).

Our Supreme Court has not overruled *Johnson* or any of the other cases citing the three exceptions that allow the court to consider a matter for the first time on appeal. But

a routine application of *Parry* could have the practical effect of overruling those cases. At the least, it would result in what some could term arbitrary decisions by this court, with some panels considering an issue and others declining to consider the same issue. On the other hand, requiring the court to justify its prudential decision not to consider an issue on appeal, would lead us back to *Johnson* and effectively overrule *Parry*. It would require the court to enter findings as to why the exceptions did not or should not apply. This case is a good example of the conundrum we face. This is the third panel to reject a constitutional challenge to K.S.A. 2020 Supp. 21-6304(a), *Pugh* and *Johnson* being the latest. But another panel chose to rule on basically the same issue as it relates to K.S.A. 2020 Supp. 21-6301(a)(13). See *State v. McKinney*, 59 Kan. App. 2d 345, 355, 481 P.3d 806 (2021), *petition for rev. filed* March 1, 2021 (holding that section 4 should be interpreted the same as the United States Constitution and that K.S.A. 2020 Supp. 21-6301[a][13] which prohibits the possession of a firearm by a person who is mentally ill is not facially unconstitutional under section 4 of the Kansas Constitution Bill of Rights). So in order to prevent the exception to the exceptions—*Parry*—from effectively overruling the exceptions, I believe the more prudent course is to state the reasons the court is not considering an issue that otherwise meets the *Johnson* criteria. The majority fails to do so here, so I write separately.

I believe Foster has properly preserved his claim by invoking two exceptions to our general rule that merit consideration. Foster has done everything we have asked of an appellant who raises an issue for the first time on appeal. He argues that the fundamental right at issue is the right to bear arms and correctly states that the issue only involves a question of law that would be dispositive of his criminal possession of a weapon charge—thus relying on exceptions 1 and 2 from *Johnson*. And he has done so in more than a conclusory manner. Foster makes a cognizant argument for the statute's unconstitutionality over the course of several pages of his brief, citing supporting authority. The State responded in kind. The majority fails to note what additional information it believes is necessary to decide Foster's claim. I am at a loss. It is not a

difficult constitutional issue to grasp, and it is one that has been raised numerous times in both federal and state courts.

Moreover, I agree that Foster's newly asserted claim meets the two recognized exceptions he relies upon—it involves only a question of law—one that would be dispositive of his conviction for criminal possession of a weapon—and it involves a fundamental right—the right to bear arms. And because the claim has been asserted at least two times already before this court, we should decide it rather than allowing the issue to continue to fester in our district courts for no good reason except that we can. And again, another panel of this court took a similar approach as I do here, by electing to consider a first-time challenge to constitutionality of K.S.A. 2020 Supp. 21-6301(a)(13). *McKinney*, 59 Kan. App. 2d at 355. So, unlike the majority, I will do what I think it should and examine the merits of Foster's claim.

*Foster makes a facial constitutional challenge to K.S.A. 2020 Supp. 21-6304(a)(2).*

Foster was convicted of the murder of David Payne. Death was caused by Foster shooting Payne with a firearm. He was also convicted of unlawful possession of a firearm by a convicted felon. At the time of the offense, he was already a convicted felon—having been convicted of a felony drug offense just over two years prior to the commission of this murder. He argues the felon in possession of a firearm statute violates section 4 of the Kansas Constitution Bill of Rights because, while section 4 allows limits on the *use* of a firearm, it places no limits on the *possession* of a firearm. According to Foster, since K.S.A. 2020 Supp. 21-6304(a)(2) criminalizes possession of a firearm for certain individuals, it conflicts with section 4 and infringes on the right to possess a firearm guaranteed by the Kansas Constitution Bill of Rights. He argues only that the statute is facially unconstitutional.

19

"'A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 [1987]). "Such challenges are disfavored, because they may rest on speculation, may be contrary to the fundamental principle of judicial restraint, and may threaten to undermine the democratic process." *State v. Bollinger*, 302 Kan. 309, 318-19, 352 P.3d 1003 (2015). "When a party has asserted a facial challenge to the constitutionality of a statute, the question is not whether that statute is authorized by the constitution, but whether it is prohibited thereby." *In re Tax Appeal of Weisgerber*, 285 Kan. 98, 102, 169 P.3d 321 (2007). To succeed in a typical facial attack, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). That is the basis of Foster's argument—that K.S.A. 2020 Supp. 21-6304(a)(2) is a legislative enactment prohibited by the section 4 of the Kansas Constitution Bill of Rights. He asserts that there would be no situation in which this statute would be lawful because he has a fundamental right to possess a firearm, regardless of his criminal history.

*Our standard of review is de novo, and we do not presume the statute is constitutional.*

This court reviews the constitutionality of a statute as a question of law and applies a de novo standard of review. *Tolen v. State*, 285 Kan. 672, 673, 176 P.3d 170 (2008). When a fundamental right is challenged, there is no presumption of constitutionality. This is because government infringement on a constitutional right is inherently suspect. *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 673, 440 P.3d 461 (2019). The right to bear arms is a fundamental constitutional right. See *McDonald v. City of Chicago*, 561 U.S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered

20

liberty"). So we do not apply a presumption of constitutionality to K.S.A. 2020 Supp. 21-6304(a)(2).

That said, before we may strike down a statute, we must first determine whether it clearly violates the defendant's rights secured by the Constitution. *State v. Boysaw*, 309 Kan. 526, 532, 439 P.3d 909 (2019). If it does, we look to whether the statutory infringement or limitation on that right is acceptable. To determine if it is an acceptable infringement on a constitutional right, we look to see if the infringement can meet the proper constitutional test. In the case of a fundamental constitutional right the test is generally one of strict scrutiny. See *Hodes*, 309 Kan. at 663. The strict scrutiny test requires us to determine whether the government's infringement of the constitutional right is narrowly tailored to serve a compelling government interest. See *State v. Ryce*, 303 Kan. 899, 957, 368 P.3d 342 (2016).

*K.S.A. 2020 Supp. 21-6304(a)(2) does not infringe on the right to bear arms under section 4 of the Kansas Constitution Bill of Rights.*

So I return to the first task of determining whether K.S.A. 2020 Supp. 21-6304(a)(2) infringes on Foster's fundamental constitutional right to possess a firearm. To determine if a constitutional right has been violated, we "look to the words of the Kansas Constitution to interpret its meaning. When the words do not make the drafters' and people's intent clear, courts look to the historical record, remembering the polestar is the intention of the makers and adopters of the relevant provisions." *Hodes*, 309 Kan. 610, Syl. ¶ 4. Consequently, I begin my analysis by turning to the text of the applicable constitutional provision.

Section 4 of the Kansas Constitution Bill of Rights provides:

21

"A person has the right to keep and bear arms for the defense of self, family, home and state, for lawful hunting and recreational use, and for *any other lawful purpose*; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power." (Emphasis added.)

It is important to point out, as Foster does in his brief, that this provision was adopted in 2010. Section 4 from the time of statehood until 2010 read as follows:

"The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power."

The differences between the original version and the current versions are important to our discussion. The new provision seems clear. An individual in Kansas has a right to possess a firearm for the purposes listed, but not for an unlawful purpose. This reservation of rights to the government to declare some possession "unlawful" was new to the 2010 version. So as with any constitutional right, even a fundamental one, in this case the voters have indicated a desire to place certain limits on the constitutional right of the people to possess a firearm. See *In re P.R.*, 312 Kan. 768, 778, 480 P.3d 778 (2021) (finding that a fundamental right to parent is not without limits); *Ryce*, 303 Kan. at 913 (noting that the fundamental rights under the Fourth Amendment to the United States Constitution do not proscribe all searches and seizures, just unreasonable ones); *State v. Limon*, 280 Kan. 275, 283-84, 22 P.3d 222 (2005) (noting that the federal fundamental right to equal protection under the law can be limited legislatively under certain circumstances); *State v. Risjord*, 249 Kan. 497, 502-03, 819 P.2d 638 (1991) (finding a right to travel is a fundamental right, but it can be subject to regulation for public safety).

There would be no reason for the granting of the right to possess firearms for any other *lawful* purpose unless there was a corresponding prohibition aimed at possessing a firearm for an *unlawful* purpose. We must "'presume that every word has been carefully

weighed, and that none are inserted, and none omitted without a design for so doing.'" *Hodes*, 309 Kan. at 622-23. To understand the use of the phrase *lawful purpose* I next focus on what an *unlawful purpose* was when this provision was adopted.

*It has been unlawful for over 50 years to possess a firearm in Kansas if you are a convicted felon.*

When the current version of section 4 was adopted by Kansas voters in 2010, it was done with the knowledge that it was unlawful in Kansas to possess a firearm if you had been convicted of a felony in the preceding five years. K.S.A. 2010 Supp. 21-6304(a)(2).

> "(a) Criminal possession of a firearm by a convicted felon is possession of any firearm by a person who:
>
> . . . .
>
> (2) . . . within the preceding five years has been convicted of a felony, other than those specified in subsection (a)(3)(A), under the laws of Kansas or a crime under a law of another jurisdiction which is substantially the same as such felony, has been released from imprisonment for a felony or was adjudicated as a juvenile offender because of the commission of an act which if done by an adult would constitute the commission of a felony, and was not found to have been in possession of a firearm at the time of the commission of the crime." K.S.A. 2010 Supp. 21-6304(a)(2).

This statutory provision was adopted by the Kansas Legislature in its current form in July 2010 when the Legislature clearly knew that an amendment to section 4 of the Kansas Constitution Bill of Rights would be submitted to the voters just a few months later. See L. 2010, ch. 136, § 189 (adopting K.S.A. 21-6304); L. 2009, ch. 152, § 1 (setting constitutional amendment to section 4 on the November 2010 ballot). In addition, the Legislature has continued to amend the statute, though not this provision in any

23

pertinent way, in 2011, 2013, and 2014 with full knowledge of the provisions of the Kansas Constitution. See L. 2011, ch. 91, § 34; L. 2013, ch. 36, § 2; L. 2014, ch. 97, § 12. And a provision similar to K.S.A. 21-6304(a)(2) has been in the Kansas statutes, in some form, since at least 1969 under a different statute number, K.S.A. 21-4204(a)(3). See L. 1969, ch. 180, § 21-4204. So it has been unlawful for a convicted felon to possess a firearm for over 50 years. The Legislature's clear intent to continue to make the otherwise constitutional possession of a firearm unlawful was reinforced by its reenactment of the provisions of K.S.A. 21-4204(a)(3)—as K.S.A. 2020 Supp. 21-6304(a)(2)— simultaneously with the constitutional amendment. In other words, a Kansan has the right to possess a gun for defending self, family, home, and state and for lawful hunting and recreational use, but does not have a right to possess a gun when the Legislature has determined circumstances under which it is unlawful.

Even though the limitation on possessing arms for only lawful purposes was not an option available in the prior version of section 4, caselaw in Kansas prior to 2010 supported the government's ability to regulate the possession of firearms under the original section 4. See *City of Junction City v. Lee*, 216 Kan. 495, 497-98, 532 P.2d 1292 (1975) (not violation of section 4 of Kansas Constitution Bill of Rights for city to adopt ordinance more restrictive than state law that prohibited person from openly carrying a firearm in the city); *Salina v. Blaksley*, 72 Kan. 230, 232-34, 83 P. 619 (1905) (holding city of Salina could prohibit a person who was intoxicated from carrying a revolver within the city limits without being in violation of section 4 of the Kansas Constitution Bill of Rights).

Accordingly, I am led to conclude that the regulation of firearms related to felons provided in K.S.A. 2020 Supp. 21-6304(a)(2) is not prohibited under section 4 of the Kansas Constitution Bill of Rights. Instead, it is entirely consistent with its plain and unambiguous language. Section 4 appears to provide a reservation of rights to the Legislature to designate circumstances in which it deems possession unlawful. And the

24

provision of K.S.A. 2020 Supp. 21-6304(a)(2) is a longstanding prohibition that the Legislature was aware of when it adopted the most recent amendments to section 4. Accordingly, finding that the statute does not infringe a constitutional right, there is no need to examine whether the statute passes the strict scrutiny test. Foster's facial challenge fails.

*Likewise, K.S.A. 2020 Supp. 21-6304(a)(2) does not infringe on the Second Amendment of the United States Constitution.*

Foster does not bring a challenge under the Second Amendment to the United States Constitution, but reviewing similar jurisprudence under the Second Amendment bolsters my conclusion that Foster presents an inadequate facial challenge to K.S.A. 2020 Supp. 21-6304(a)(2). Moreover, the general rule in Kansas is that provisions in the Kansas Constitution are interpreted similarly to their federal counterparts "notwithstanding any textual . . . differences." *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 (2013).

I pause to note that as to the most basic textual difference, section 4 of the Kansas Constitution *grants* certain rights to the people or individuals, while the United States Constitution Bill of Rights places a limitation on government power by prohibiting it from adopting any laws that *infringe* on designated rights. Our Supreme Court touched on this distinction in *Schaake v. Dolley*, 85 Kan. 598, 601, 118 P. 80 (1911), when it described the Kansas Constitution Bill of Rights as "a political maxim addressed to the wisdom of the legislature and not a limitation upon its power." But it rejected that position in *Winters v. Myers*, 92 Kan. 414, 428, 140 P. 1033 (1914) ("while declaring a political truth, [section 2 of the Kansas Constitution Bill of Rights] does not permit legislation which trenches upon the truth thus affirmed"). See *Hodes*, 309 Kan. at 634-36 (discussing the meaning of *Schaake*, *Winters*, and their progeny and holding that the Kansas Constitution Bill of Rights limits government power). So I proceed to

25

jurisprudence surrounding the Second Amendment to the United States Constitution for guidance.

The Second Amendment to the United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." Both the Kansas Constitution and the United States Constitution protect an individual's right to bear arms. See *District of Columbia v. Heller*, 554 U.S. 570, 579-80, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). But as already indicated, like most federal constitutional rights, this right is not unlimited. 554 U.S. at 595. Even the United States Supreme Court, as expressed by Justice Scalia, noted that there were widely recognized restrictions on the right to bear arms:

> "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626.

The Court noted that these prohibitions are "presumptively lawful regulatory measures" that do not run afoul of the Second Amendment. 554 U.S. at 627 n.26; see also *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' . . . . We repeat those assurances here."); *United States v. Griffith*, 928 F.3d 855, 870-71 (10th Cir. 2019) (citing *Heller* in rejecting defendant's claim that Second Amendment granted him an absolute right to carry a weapon so his conviction for felon in possession of a firearm should be reversed).

Federal courts are split on whether these longstanding and presumptively lawful regulatory measures completely fall outside the scope of the Second Amendment protections (meaning they do not infringe a constitutional right at all) or whether they

burden conduct protected by the Second Amendment but presumptively pass muster in a facial attack. See Pratt, *A First Amendment-Inspired Approach to Heller's "Schools" and "Government Buildings*," 92 Neb. L. Rev. 537, 562 (2014). Regardless of the position taken, all federal circuit courts—with the exception of the Court of Appeals for the Federal Circuit—have addressed facial challenges to the federal felon-in-possession of a firearm statute and have rejected them, concluding that the "'presumptively lawful'" language of *Heller* prevents success on such a claim. See *Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019) (listing cases involving facial challenges to prohibitions on possession of firearms by felons); *State v. Craig*, 826 N.W.2d 789, 794 (Minn. 2013) (listing cases involving facial challenges to prohibitions on possession of firearms by felons).

So even though the Second Amendment does not contain the unique "any lawful" purpose language of section 4, which specifically reserves the right of the government to proclaim some arms possession unlawful, the result is still the same for the Second Amendment as for section 4—felon in possession of firearm statutes do not infringe on the Second Amendment.

*Likewise, statutes like K.S.A. 2020 Supp. 21-6304(a)(2) do not infringe on the constitutional right to bear arms in other states.*

Finally, to further bolster my position here, state supreme courts that have considered the issue—with one exception noted below—have found felon in possession statutes constitutional under either facial or as-applied challenges, based on similar, and in some cases even narrower, state constitutional provisions. See *People v. Blue*, 190 Colo. 95, 102-03, 544 P.2d 385 (1975) (felon in possession law did not violate Colo. Const. art. 2, § 13—"'The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.'"); *State v. Eberhardt*, 145 So. 3d 377, 379 (La.

27

2014) (felon in possession of firearm statute not unconstitutional under art. I, § 11 of the Louisiana Constitution which provides—after a 2012 amendment—that "[t]he right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction on this right shall be subject to strict scrutiny"); *State v. Brown*, 571 A.2d 816, 821 (Me. 1990) (felon in possession of firearm statute was not unconstitutional under Maine Const. art. 1, § 16—"Every citizen has a right to keep and bear arms and this right shall never be questioned."); *State v. Clay*, 481 S.W.3d 531, 538 (Mo. 2016) (felon in possession law did not violate recently amended Mo. Const. art. 1, § 23—"That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as result of a mental disorder or mental infirmity," even when applied to nonviolent felons); *State v. McCoy*, 468 S.W. 3d 892, 894 (Mo. 2015) (same as applied to felons in possession under prior version of Mo. Const. art. 1, § 23— "That the right of every citizen to keep and bear arms . . . in defense of his home, person, and property, or when lawfully summoned in aid of the civil power, shall not be questioned, but this shall not justify the wearing of concealed weapons."); *State v. Comeau*, 233 Neb. 907, 916, 448 N.W.2d 595 (1989) (felon in possession statute not unconstitutional under Neb. Const. art. I, § 1—"All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty, the pursuit of happiness, and the right to keep and bear arms for security or defense of self, family, home, and others, and for lawful common defense, hunting, recreational use, and all other lawful purposes, and such rights shall not be denied or infringed by the state or any subdivision thereof."); *State v. Smith*, 132 N.H. 756, 758,

571 A.2d 279 (1990) (felon in possession statute not unconstitutional under N.H. Const. Pt. 1, art. 2-a—"All persons have the right to keep and bear arms in defense of themselves, their families, their property and the state."); *State v. Roundtree*, 395 Wis. 2d 94, 103, 115, 952 N.W.2d 765 (2021) (felon in possession statute not unconstitutional under Wis. Const. art. 1, § 25—"[t]he people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose"—even if felony was for failure to pay child support 10 years ago). But see *Britt v. State*, 363 N.C. 546, 550, 681 S.E.2d 320 (2009) (statute prohibited convicted felons from ever in their lifetime possessing a firearm was unreasonable and violated N.C. Const. art. 1, § 30—"A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace are dangerous to liberty, they shall not be maintained, and the military shall be kept under strict subordination to, and governed by, the civil power,"—*as applied to the defendant* whose conviction occurred 30 years earlier with no new offenses).

*In conclusion, K.S.A. 2020 Supp. 21-6304(a)(2) is not facially unconstitutional.*

In sum, once we take Foster up on his invitation to consider his argument for the first time on appeal, he must make it convincingly. He fails to do so here.

Foster points to nothing in the plain language of section 4, in the history of the Kansas Constitution, or in our caselaw that would suggest the right to bear arms limits lawful regulatory measures such as the prohibition against possession of weapons by convicted felons. Nor does he provide any factual, historical, or legal reason why Kansans intended the protections of the Kansas Constitution to apply more broadly to persons convicted of felonies than the United States Constitution does. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (holding failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority is like

29

failing to brief an issue). Indeed, section 4's language recognizing an individual right to bear arms only for lawful purposes cuts against Foster's broad reading.

The State, on the other hand, presents a compelling argument that K.S.A. 2020 Supp. 21-6304(a)(2) does not infringe on the right to bear arms at all.

For the reasons stated, I would find that Foster has failed to convincingly argue that K.S.A. 2020 Supp. 21-6304(a)(2) is facially unconstitutional, and I would affirm his conviction.